Timothy R. Snowball, Cal Bar No. 317379
tsnowball@freedomfoundation.com
Shella Alcabes, Cal Bar No. 267551
salcabes@freedomfoundation.com
Freedom Foundation
PO Box 552
Olympia, WA 98507
Telephone: (360) 956-3482

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **FREEDOM FOUNDATION**, a not-for-profit organization,<br><br>Plaintiff,<br><br>v.<br><br>**RITA GAIL TURNER**, in her official capacity as Litigation Research Coordinator in the Public Records Act Unit of the Office of General Counsel for the Los Angeles Unified School District; **DEVORA NAVERA REED**, in her official capacity as General Counsel for Los Angeles Unified School District; and **ALBERTO M. CARVALHO**, in his official capacity as Superintendent of Los Angeles Unified School District,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, AND NOMINAL DAMAGES FOR VIOLATION OF CIVIL RIGHTS.**<br><br>[42 U.S.C. § 1983] |

## INTRODUCTION

The Civil Rights Act of 1871, codified at 42 U.S.C. § 1983 (Section 1983), guarantees state citizens a federal forum to challenge state officials' violation of federally protected rights. California Government Code § 3556 (Section 3556) prohibits anyone but government unions from knowing the date, time, and place of new public employee orientations. This statute hinders all speech other than that favoring government unions. Section 3556 is thus a content-based regulation that discriminates between viewpoints, functions as a prior restraint on protected speech, and unconstitutionally denies access to government-held information.

Freedom Foundation is a 501 (c)(3) non-profit whose mission includes informing public employees about their First Amendment rights to refuse union membership and subsidize union political speech through the extraction of dues' deductions, primarily through direct contact. Los Angeles Unified School District (LAUSD) denied the Foundation's request for access to information regarding upcoming new employee orientations, solely pursuant to Section 3556, on January 30, 2023. But for this denial, the Foundation would have communicated, and will in the future communicate, directly with new employees about their First Amendment rights in public spaces outside LAUSD orientation locations.

Therefore, the Foundation brings this action under Section 1983 for the violation of its First Amendment rights, and seeks injunctive relief, a declaratory judgment, and nominal damages.

COMPLAINT
NO.

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

## JURISDICTION AND VENUE

1. This action arises under the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983 (action for deprivation of federal civil rights), and 28 U.S.C. §§ 2201-2202 (action for declaratory relief), including relief pursuant to Federal Rule of Civil Procedure 65 (permanent injunctive relief).

2. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 (federal questions) and 28 U.S.C. § 1343 (deprivation of federal civil rights).

3. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391, because the Defendants reside in California, and a substantial part of the events giving rise to this action occurred in this judicial district.

4. The Defendants are "persons" within the meaning of Section 1983, and may be sued in their official capacities for equitable relief under *Ex parte Young*, 209 U.S. 123 (1908), including for non-compensatory nominal damages.

## PARTIES

5. Founded in 1991, Plaintiff Freedom Foundation is a national 501(c)(3) non-profit that informs public employees about their First Amendment rights to refrain from union membership and the payment of union dues, and provides information regarding service providers alternate to unions. Ideally, this outreach occurs through direct face-to-face contact, either at public fora near their places of work, or upon invitation, inside their homes. Incorporated in Washington State, Freedom Foundation is headquartered in Olympia, WA.

6. Defendant Rita Gail Turner, sued in her official capacity, is a Litigation Research Coordinator in the Public Records Act Unit of the Office of the General Counsel for the Los Angeles Unified School District. In this role, Ms. Turner is responsible for overseeing and managing incoming requests for public records submitted to her office under the California Public Records Act, Cal. Gov't Code § 6250, *et seq.*, including decisions denying access to records. Ms. Turner's office is located at 333 South Beaudry Avenue, Los Angeles, CA 90017.

7. Defendant Devora Navera Reed, sued in her official capacity, serves as General Counsel for Los Angeles Unified School District. In this role, Reed is responsible for overseeing and managing the Public Records Act Unit of the Office of the General Counsel, and thus all requests for public records submitted to her office under the California Public Records Act. Reed's duties include deciding whether to deny requests for access to records. Ms. Reed's office is located at 333 South Beaudry Avenue, Los Angeles, CA 90017.

8. Defendant Alberto M. Carvalho, sued in his official capacity, is Superintendent of Los Angeles Unified School District, the nation's second-largest school district. In this role, Mr. Carvalho is responsible for overseeing and managing all subsidiary departments, including the Office of the General Counsel for the District, which is tasked with overseeing and managing all requests for public records under the California Public Records Act. Mr. Carvalho's office is located at 333 South Beaudry Avenue, Los Angeles, CA 90017.

## FACTUAL ALLEGATIONS

**A. Supreme Court Frees Employees from Involuntary Union Payments**

9. On June 27, 2018, the United States Supreme Court handed down its landmark decision in *Janus v. Am. Fed'n of State, Cnty. & Mun. Emps., Council 31*, 138 S. Ct. 2448 (2018).

10. *Janus* held that no money may be deducted from a non-consenting public employee for use in a union's political speech, nor any attempt made for such a deduction, unless that employee affirmatively consents to the payment. *Id.* at 2486.

11. This standard can be met only when an employee knowingly, voluntarily, and when sufficiently informed about the consequences of their action, waives their First Amendment right to refuse the union subsidy. *Id.*

12. Further, *Janus* states that this waiver may not be presumed, and must instead be freely given and demonstrated by clear and compelling evidence. *Id.*

13. Given this change in the ability of government unions to use the force of state law to fund their political activities by using the money of public employees, unions, and their government allies, began efforts to circumvent *Janus*.

14. The goal of these efforts was to protect union power by ensuring the flow of money to the unions was as uninterrupted as possible.

**B. California's Efforts to Undermine the *Janus* Decision**

15. On the very same day that *Janus* was decided, June 27, 2018, former California Governor Jerry Brown signed Senate Bill 866 (SB 866) into law.

16. SB 866 comprised a package of statutes adding sections to the California Government Code that were intentionally designed to blunt the effect of the *Janus* case and protect and bolster government union coffers.

17. This package of statutes included the addition of California Government Code § 3550, which makes it illegal for public employers to communicate with their employees regarding their First Amendment rights.

18. It also included the addition of California Government Code § 3553(b), which prevents employers from communicating with employees regarding the *Janus* case and the related First Amendment issues.

19. Also added to the California Government Code was § 1153(h), which forces employees to take union payroll deduction issues to the union instead of their own payroll department or employer.

20. In line with the goal of protecting and bolstering union power, SB 866 also added Section 3556 to the California Government Code, which grants government unions "mandatory access" to new public employee orientations in order to pressure new employees to join and authorize payroll deductions.

21. Section 3556 further provides that "[t]he date, time, and place of the orientation <u>shall not be disclosed</u> to anyone other than the employees, the exclusive representative, or a vendor that is contracted to provide a service for purposes of the orientation." (emphasis added).



**C. Freedom Foundation's Mission to Communicate With Public Employees**

22. Freedom Foundation's mission to communicate with public employees requires submitting public record act requests to government employers seeking public information about how to reach the employees.

23. Based on the results of these requests, the Foundation then conducts face-to-face outreach to prospective and current public union members.

24. These conversations take place outside government offices, in other protected public places, and upon invitation, within public employees' homes.

25. Since 2018, the Foundation has successfully helped over 130,000 public employees exercise their First Amendment rights to refuse union membership and the subsidization of union political speech.

26. These efforts include helping over 48,000 public employees across the State of California.

27. In all, Freedom Foundation has helped public employees save over $275 million dollars of their own lawfully earned wages.

**D. Freedom Foundation Denied Access to Orientation Information**

28. On January 19, 2023, the Foundation submitted a request for public records to the Office of the General Counsel for LAUSD, under the California Public Records Act, California Government Code §§ 2650, *et seq*. **Exhibit A**.

29. In this request, the Foundation asked for the "date, time, and place of all orientations for new District employees scheduled from February 1, 2023, to

COMPLAINT
NO.



P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

August 30, 2023." *Id.*

30.  The purpose of this request was to enable the Foundation to communicate with new public employees about their First Amendment rights in protected public fora outside the location of the orientations, either by face-to-face conversations or providing them with written information.

31.  On January 25, 2023, Miriam Gonzalez, a legal secretary with the Office of the General Counsel for the District, acknowledged the Foundation's request for public records. **Exhibit B**.

32.  On January 30, 2023, Defendant Rita Gail Turner, a Litigation Research Coordinator in the Public Records Act Unit of the Office of the General Counsel for the District, denied the Foundation's request for public records regarding the date, time, and location of planned new employee orientations. **Exhibit C**.

33.  Specifically, Ms. Turner wrote that: "Per California Government Code section 3556, the date, time, and place of the orientation shall not be disclosed to anyone other than the employees, the exclusive representative, or a vendor that is contracted to provide a service for purposes of the orientation." *Id.*

34.  Further, Ms. Turner states that: "[A]ccording to California Government Code section 7927.705, the Public Records Act recognizes exemptions to the disclosure of a record which is exempted or prohibited from disclosure pursuant to state law. As such, the District is precluded from providing the requested information." *Id.*

35. Ms. Turner denied the Foundation's request pursuant to the prohibition contained in Section 3556.

**E. Allegations Applicable to Request for Equitable Relief**

36. But for the prohibition contained in Section 3556, Ms. Turner would have granted the Foundation's request for the applicable records concerning new employee orientations.

37. Such information is vital for the Foundation to accomplish its mission to inform employees about their First Amendment rights.

38. But for the operation of Section 3556, the Foundation would have access to information regarding the dates, times, and locations of new LAUSD employee orientations.

39. But for the prohibition contained in Section 3556, the Foundation would be on site in public fora during the applicable new employee orientations, communicating with new employees regarding their First Amendment rights and union membership. **Exhibit D**.

40. Freedom Foundation will submit future requests to LAUSD for public records concerning new employee orientations in order to complete its mission. *Id.*

41. The controversy between the Foundation and the Defendants is a concrete dispute concerning the legal relations of parties with adverse legal interests.

42. The dispute is real and substantial.

43. Defendants denied and continue to deny the Foundation access to

information under Section 3556 vital to complete its mission to inform new LAUSD employees about their First Amendment rights.

44. Injunctive relief is appropriate, as the Foundation is suffering a continuing irreparable injury to its First Amendment rights for which there is no adequate remedy at law.

45. The declaratory relief sought is not based on a hypothetical state of facts, nor would it amount to a mere advisory opinion.

46. The Foundation and Defendants dispute the constitutionality of the ongoing denial of information regarding the new LAUSD employee orientations occurring under a state statute, Section 3556.

47. As a result of the foregoing, an actual and justiciable controversy exists between the Foundation and the Defendants regarding their respective legal rights.

48. The matter is ripe, and judicial review is appropriate.

## CAUSES OF ACTION

### COUNT I
### Discrimination in Provision of Information
### Based on Viewpoint of the Speaker
### First Amendment
### (42 U.S.C. § 1983)

49. The Foundation re-alleges and incorporates by reference each and every paragraph set forth above.

50. Viewpoint discrimination can occur through the regulation of speech

based on the specific motivating ideology or the opinion or perspective of the speaker, or the prohibition of public discussion of an entire topic, even where the regulation is facially neutral as to the content of the speech.

51. In other words, viewpoint discrimination exists where a law targets particular views taken by speakers on a subject.

52. Specifically, the First Amendment forbids a state from discriminating among viewpoints in the provision of information within its control.

53. When the government selectively discloses information within its control, a First Amendment claim will lie if the government denies access to information based on an illegitimate criterion such as the viewpoint of the requestor.

54. Thus, a state violates the First Amendment by imposing viewpoint-based conditions on access to government-controlled information or by otherwise discriminating among viewpoints in the information's provision.

55. Section 3556 impermissibly discriminates in the provision of information based on the viewpoint of the requestor.

56. The state assigns a higher value to union speech, the purpose of which in this context is to recruit new union members and secure their authorization to deduct dues for use in the unions' political speech, over alternative views like the Foundation's, which seeks to inform employees of their First Amendment rights to refuse union membership, and how to avail themselves of alternative avenues of services for themselves and their families.

COMPLAINT
NO.



P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

57. Under Section 3556, unions espousing pro-membership views, are granted exclusive access to new employee orientations, and are even permitted inside the orientation location to make their pitch.

58. Meanwhile, all other parties espousing an alternative view, such as the Foundation, are denied access even to information regarding when and where those orientations will be held.

59. When the Defendants denied the Foundation's request for the dates, times, and places of planned new employee orientations, they did so based on Section 3556, which is unconstitutional because it discriminates in the provision of information based on the viewpoint of the requestor.

60. Laws that discriminate based on viewpoint are subject to strict scrutiny.

61. Under strict scrutiny, the burden is on the government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest.

62. Section 3556 fails strict scrutiny.

63. The government has no legitimate, let alone compelling, interest in denying the Foundation's access to the dates, times, and places of new employee orientations so Foundation staff is unable to communicate with new employees outside the orientation locations.

64. Even if Section 3556 did have a legitimate or compelling purpose, it is not narrowly tailored to support that interest, as there are ample more narrowly

tailored alternatives available.

65.  For example, the state could still have provided the unions mandatory access to new employee orientations without making information regarding such orientations a secret to all but the unions.

66.  The only explanation for this choice was to favor union speech to the detriment of all other forms of speech.

67.  Hence, the Foundation seeks injunctive and declaratory relief against all Defendants to enjoin enforcement of Section 3556 under 28 U.S.C. §§ 2201-2202, and nominal damages of $1.00 from each Defendant under Section 1983.

**COUNT II**
**Unconstitutional Content-Based Speech Regulation**
**Based on Function or Purpose of Speech**
**First Amendment**
**(42 U.S.C. § 1983)**

68.  The Foundation re-alleges and incorporates by reference each and every paragraph set forth above.

69.  Government regulations based on the content of a speaker's message, are unconstitutional under the First Amendment unless they satisfy strict scrutiny.

70.  Government regulation of speech is content-based if a law applies to particular speech because of the topic discussed or the idea or message expressed.

71.  This requires a court to consider whether a regulation of speech on its face draws distinctions based on the message a speaker conveys.

72. Some facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, defining regulated speech by its function or purpose.

73. Section 3556 is facially content-based because it regulates speech based upon the function and purpose of the views espoused.

74. Under Section 3556, unions acting as the exclusive representatives of LAUSD employees and espousing pro-membership views, are granted exclusive access to new employee orientations in order to sign up new members and convince them to authorize the deduction of dues to subsidize the unions' political speech.

75. These unions are also permitted inside the orientation locations.

76. All other parties that wish to espouse an alternative view to union membership, like the Foundation, are denied access to information even regarding the dates, times, and places of the orientations.

77. The statute assigns a higher value to pro-union speech, the function and purpose of which is to recruit new union members, than the value assigned to alternative views like the Foundation's, the function and purpose of which is to inform employees of their First Amendment rights to refuse union membership and the subsidization of union political speech.

78. Section 3556 thus facially discriminates between pro-union and alternative forms of speech based on the content of the speech because it draws distinctions based on the function and purpose of the views espoused, or the content

of the message conveyed.

79. When the Defendants denied the Foundation the ability to access the requested information based on the function and purpose of the Foundation's union-opposed speech, the Defendants violated the Foundation's First Amendment.

80. Content-based speech restrictions are subject to strict scrutiny.

81. Under strict scrutiny, the burden is on the government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest.

82. Section 3556 fails strict scrutiny.

83. The government has no legitimate, let alone compelling, interest in denying the Foundation's access to the dates, times, and places of new employee orientations.

84. Even if Section 3556 did have a legitimate or compelling purpose, it is not narrowly tailored to support that interest, as there are ample more narrowly tailored alternatives available.

85. Hence, the Foundation seeks injunctive and declaratory relief against all Defendants to enjoin enforcement of Section 3556 under 28 U.S.C. §§ 2201-2202, and nominal damages of $1.00 from each Defendant under Section 1983.

## COUNT III
## Speech Chilled through Prior Restraint
## First Amendment
## (42 U.S.C. § 1983)

86. The Foundation re-alleges and incorporates by reference each and every paragraph set forth above.

87. A prior restraint on protected speech exists when the government can deny access to a forum for expression before the expression occurs.

88. Prior restraints are prohibited by the First Amendment, as one of the most serious and the least tolerable infringements on free speech rights.

89. A system of prior restraints bears a heavy presumption against its constitutional validity, and the government carries a heavy burden of showing justification for the imposition of such a restraint.

90. Prior restraints on speech occur based on the content of the speech.

91. In order to qualify as a prior restraint a statute must: 1) forbid a party from engaging in future expressive activities, 2) require the party to obtain prior approval for the future expressive activities, and 3) must have a close enough nexus to expression, or to conduct commonly associated with expression, to pose a real and substantial threat to free speech rights.

92. In order to justify a prior restraint, the government must demonstrate that the restraint is justified without reference to the content of the speech, and is narrowly tailored to serve a compelling governmental interest.

FREEDOM FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

93. Section 3556 and the Defendants' denial of the Foundation's requested information meet each of these requirements.

94. The Defendants denial of information based on Section 3556 regarding the date, time, and place of planned new employee orientations operated to forbid the Foundation from engaging in future expressive activities, specifically communicating with new employees on those dates, times, and places regarding their First Amendment rights.

95. Under Section 3556, the Foundation is denied the approval of the Defendants prior to engaging in future expressive activities, as the Defendants are specifically prohibited from releasing information under the California Public Records Act that, but for Section 3556, they would release.

96. Section 3556 is directly related to the expressive activities of the Foundation and all other non-union members of the public, and thus poses a real and substantial threat to free speech rights.

97. Hence, the Foundation seeks injunctive and declaratory relief against all Defendants to enjoin enforcement of Section 3556 under 28 U.S.C. §§ 2201-2202, and nominal damages of $1.00 from each Defendant under Section 1983.

## COUNT IV
### Denial of Access to Government-Held Information
### First Amendment
### (42 U.S.C. § 1983)

98. The Foundation re-alleges and incorporates by reference each and every paragraph set forth above.

99. By protecting those who wish to enter the marketplace of ideas from government attack, the First Amendment protects the public's interest in receiving truthful information.

100. The public's access to government-held information need not be premised on a claimed special privilege of access, but flows rather from the First Amendment itself.

101. The government thus may not, consistent with the spirit of the First Amendment, contract the spectrum of available knowledge.

102. The right to receive information is a necessary predicate to the recipient's meaningful exercise of their own rights of speech.

103. Thus, without the right to receive information, the right to speak freely on protected topics of public importance would necessarily be imperiled.

104. To the extent the information is withheld by the government to discourage the exercise of First Amendment freedoms, even a minor burden may violate the Constitution.

105. By denying the Foundation access to the dates, times, and places of new

employee orientations, the Defendants violated the Foundation's First Amendment right to receive truthful information.

106. Hence, the Foundation seeks injunctive and declaratory relief against all Defendants to enjoin enforcement of Section 3556 under 28 U.S.C. §§ 2201-2202, and nominal damages of $1.00 from each Defendant under Section 1983.

## PRAYER FOR RELIEF

Wherefore, the Foundation respectfully requests that this Court:

**A.  Issue a declaratory judgement:**

- That Cal. Gov't Code § 3556 is viewpoint discriminatory regulation regarding the provision of government-controlled information which favors union speech to the detriment of all other viewpoints, facially and as applied to the Foundation, and is unconstitutional and unenforceable;

- That Cal. Gov't Code § 3556 is a facially content-based speech regulation that violates the First Amendment, facially and as applied to the Foundation, and is unconstitutional and unenforceable;

- That Cal. Gov't Code § 3556 is an unconstitutional prior restraint violating the First Amendment, facially and as applied to the Foundation, and is unconstitutional and unenforceable;

- That Cal. Gov't Code § 3556 unconstitutionally denies the public access to government-held information violating the First Amendment, facially and as applied to the Foundation, and is unconstitutional and unenforceable.

COMPLAINT
NO.

FREEDOM FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

**B.     Issue a permanent injunction:**

- Enjoining the Defendants from enforcing Section 3556 insofar as it denies the Foundation and other members of the public access to the date, time, and place of new employee orientations.

**C.     Enter judgment:**

- Awarding the Foundation $1.00 in nominal damages from each of the Defendants for the deprivation of the Foundation's First Amendment rights;

- Award the Foundation its costs and attorneys' fees under Section 1983 and 42 U.S.C. § 1988;

- Award the Foundation any further relief to which it may be entitled and any other relief this Court deems just and proper.

Date: May 1, 2023

Respectfully submitted,

FREEDOM FOUNDATION

Timothy R. Snowball, Cal Bar No. 317379
Shella Alcabes, Cal Bar No. 267551
Freedom Foundation
PO Box 552
Olympia, WA  98507
Telephone: (360) 956-3482
tsnowball@freedomfoundation.com
salcabes@freedomfoundation.com

*Attorneys for Plaintiff*