UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREEDOM FOUNDATION, a not-for-profit organization, <br><br> Plaintiff, <br><br> v. <br><br> RITA GAIL TURNER, in her official capacity as Litigation Research Coordinator in the Public Records Act Unit of the Office of General Counsel for the Los Angeles Unified School District, et al., <br><br> Defendants, <br><br> and <br><br> CALIFORNIA PUBLIC EMPLOYMENT RELATIONS BOARD, et al., <br><br> Intervenor-Defendants. | Case No. 2:23-CV-03286-WLH-JPR <br><br> **ORDER RE INTERVENOR-DEFENDANTS' MOTIONS TO DISMISS [52] AND [54]** |

Intervenor-Defendant California Public Employment Relations Board ("PERB") brings a Motion to Dismiss Plaintiff's First Amended Complaint ("FAC") (PERB Mot. to Dismiss, Docket No. 52); Intervenor-Defendants United Teachers Los Angeles and SEIU Local 99 (collectively, the "Unions") also bring a separate Motion to Dismiss Plaintiff's FAC. (Unions Mot. to Dismiss, Docket No. 54 (collectively with the PERB Mot. to Dismiss, the "Motions")). On January 12, 2024, the Court held a hearing and heard oral argument from PERB, the Unions, and Plaintiff. For the reasons below, the Motions are **GRANTED**.

## I. BACKGROUND

### A. Factual Background

Plaintiff Freedom Foundation ("Freedom Foundation" or the "Foundation") "is a national § 501(c)(3) non-profit that educates public employees about their First Amendment rights to refrain from union membership and the payment of union dues." (FAC, Docket No. 46 ¶ 5). Central to the Foundation's message is the Supreme Court's holding in *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448 (2018) that "States and public-sector unions may no longer extract agency fees from nonconsenting employees." *Id.* at 2486. The Foundation frequently spreads this message "through direct face-to-face contact, either at public fora near [public employees'] places of work, or upon invitation, inside their homes." (FAC ¶ 5).

After the Supreme Court decided *Janus*, the California Legislature passed Senate Bill 866 ("SB 866"). (*Id.* ¶ 54). SB 866 amended, *inter alia*, California Government Code section 3556 ("section 3556"), a 2017 law that required public employers to provide exclusive bargaining representatives mandatory access to new employee orientations. (*Id.* ¶ 52, 55–57, Ex. G). Since SB 866's passage in 2018, section 3556 has also provided that "[t]he date, time, and place of" orientations for new public employees "shall not be disclosed to anyone other than the employees, the exclusive

representative, or a vendor that is contracted to provide a service for purposes of the orientation." (*Id.* ¶ 53).

On January 19, 2023, Freedom Foundation submitted a request for public records to the Office of the General Counsel for the Los Angeles Unified School District ("LAUSD") under the California Public Records Act, California Government Code §§ 2650, *et seq*. (*Id.* ¶ 122, Ex. P). The request sought the "date, time, and place of all orientations for new District employees scheduled from February 1, 2023, to August 30, 2023." (*Id.* ¶ 123). According to Freedom Foundation, "the purpose of this request was to enable the Foundation to communicate with new public employees about their First Amendment rights in protected public fora outside the location of the orientations, either by face-to-face conversations or providing them with written information." (*Id.* ¶ 124). On January 30, 2023, Defendant Rita Gail Turner, a Litigation Research Coordinator in the Public Records Act Unit of the Office of the General Counsel for LAUSD, denied the Foundation's request for the date, time, and location of new employee orientations in compliance with section 3556. (*Id.* ¶¶ 126–127).

On May 1, 2023, Freedom Foundation filed suit challenging the constitutionality of the provision of section 3556 that prohibits the disclosure of information regarding orientations for public employees. (*See generally* Compl., Docket No. 1). The Foundation names as Defendants three LAUSD employees in their official capacities: Turner; Devora Navera Reed, General Counsel for LAUSD; and Alberto M. Carvalho, Superintendent of LAUSD (collectively, the "LAUSD Defendants"). (*Id.* ¶¶ 6–8). The Foundation alleges four counts under 42 U.S.C. § 1983 for violations of the First Amendment: Count I for viewpoint discrimination (FAC ¶¶ 143–61), Count II for unlawful content-based regulation of speech (*id.* ¶¶ 162–79), Count III for an unlawful prior restraint (*id.* ¶¶ 180–91), and Count IV for unlawful denial of access to government-held information (*id.* ¶¶ 192–200). Freedom Foundation seeks a declaratory judgment that the challenged provision of section 3556 violates the First

1  Amendment, a permanent injunction preventing LAUSD Defendants from enforcing
2  section 3556, and "$1.00 in nominal damages from each of the Defendants for the
3  deprivation of the Foundation's First Amendment rights," as well as costs and
4  attorney's fees. (*Id.* at 35–37).

5         **B. Procedural Background**

6      On June 16, 2023, PERB—the California government agency that enforces
7  section 3556—filed a motion to intervene in this matter. (PERB Mot. to Intervene,
8  Docket No. 25); Cal. Gov't Code § 3555.5. On July 14, 2023, the Unions also filed a
9  Motion to Intervene as Defendants. (Unions Mot. to Intervene, Docket No. 27). On
10 July 21, 2023, Plaintiff and LAUSD Defendants filed a joint stipulation regarding
11 LAUSD Defendants' limited participation in the case. (Stipulation, Docket No. 29). On
12 September 19, 2023, the Court granted the parties' stipulation to limit the participation
13 of the LAUSD Defendants, (Order, Docket No. 41), and granted the motions to
14 intervene by PERB and the Unions, (Order, Docket No. 40). California Attorney
15 General Rob Bonta filed a motion to intervene on November 3, 2023, (CA AG Mot. to
16 Intervene, Docket No. 51), which the Court granted (Order, Docket No 56).

17     Meanwhile, on October 24, 2023, the Foundation filed the FAC, amended to add
18 new allegations regarding the California Legislature's motives for passing SB 866. (*See*
19 FAC ¶¶ 17–75). On December 1, 2023, PERB and the Unions each filed motions to
20 dismiss the FAC, which the Court now considers.

21 **II.**    **DISCUSSION**

22     To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient
23 factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"
24 *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550
25 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual
26 content that allows the court to draw the reasonable inference that the defendant is liable
27 for the misconduct alleged." *Id.*
28

The court must construe the complaint in the light most favorable to the plaintiff and take its non-conclusory allegations as true. *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022). The court is not required, however, to accept as true legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions…").

Pursuant to Fed. R. Civ. P. 15(a)(2), when a motion to dismiss is granted, courts should "freely give leave [to amend] when justice so requires." In determining whether leave to amend is warranted, courts consider "bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and whether the party has previously amended his pleadings." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Id.*

### A. First and Second Causes of Action

The Foundation brings two related claims for content-based discrimination and viewpoint discrimination. "Government discrimination among viewpoints—or the regulation of speech based on 'the specific motivating ideology or the opinion or perspective of the speaker'—is a 'more blatant' and 'egregious form of content discrimination.'" *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 168–69 (2015) (quoting *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995)); *see also Junior Sports Mags. Inc. v. Bonta*, 80 F.4th 1109, 1124 (9th Cir. 2023) (Vandyke, C.J., concurring) ("Viewpoint discrimination is a type of content discrimination, but a 'more blatant' type."). "[A] speech regulation targeted at specific subject matter is content based," however, "even if it does not discriminate among viewpoints within that subject matter." *Id.*

Because viewpoint discrimination is a subtype of content-based discrimination, the Court will broadly consider whether section 3556 is a content-based regulation, and, if so, whether it discriminates on viewpoint specifically. To do so, the Court must

evaluate both "whether [the] law is content based on its face and whether the purpose and justification for the law are content based." *Reed*, 576 U.S. at 156. If at least one of those criteria is met, the law is subject to strict scrutiny. *Id.* at 163–64.

*1. Facial Discrimination*

Freedom Foundation first argues that section 3556 is discriminatory on its face. (Opp'n to Mots. to Dismiss ("Opp'n"), Docket No. 58 at 6–9). A regulation of speech is facially content-based "if it 'target[s] speech based on its communicative content'— that is, if it 'applies to particular speech because of the topic discussed or the idea or message expressed.'"[1] *City of Austin, Texas v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 69 (2022) (quoting *Reed*, 576 U.S. at 163). "Some facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, defining regulated speech by its function or purpose." *Reed*, 576 U.S. at 163–64. Both types of facial distinction are "drawn based on the message a speaker conveys." *Id.*

Section 3556 is not facially content-based because it does not draw distinctions based on the message the speaker conveys. The regulation at issue in this case is very similar to the one at issue in *Boardman*, 978 F.3d 1092. There, the Ninth Circuit considered a Washington ballot initiative that "prohibit[ed] public access to certain government-controlled information, including the personal information of in-home care providers," but required that the same personal information be provided to the in-home care providers' exclusive bargaining representative. *Id.* at 1098. In other words, like section 3556, the regulation at issue in *Boardman* gave collective bargaining

---

[1] It is worth mentioning that Freedom Foundation brings a cognizable First Amendment claim, even though the issue here is whether the Foundation has a right to access information regarding employee orientations for the purpose of engaging in speech at those orientations—not whether the Foundation has a right to engage in the speech itself. *See Boardman v. Inslee*, 978 F.3d 1092, 1105 (9th Cir. 2020) (finding that "the government may transgress the First Amendment by imposing viewpoint-based conditions on access to government-controlled information or by otherwise discriminating among viewpoints in the provision of information within its control").

representatives exclusive access to information regarding the public employees they represented. *Id.*

The appellants in *Boardman*—including the Foundation—argued that the law discriminated based on viewpoint, but the Ninth Circuit rejected that argument. The court found that the law was not facially discriminatory because it "den[ied] access to [p]rovider [i]nformation irrespective of a requester's views, ideology, or message on any particular subject." *Id.* at 1109. To be entitled to the protected information, the requester needed to be an exclusive bargaining representative certified under Washington law. *Id.* at 1110. Thus, the Ninth Circuit reasoned, the law at issue "[did] not permit the [u]nions access to [p]rovider [i]nformation based on the *views* they espouse on the subject of collective bargaining," but instead was "based entirely on their *legal status* as certified exclusive bargaining representatives under Washington law." *Id.* (citing Wash. Rev. Code. § 41.56.080). Were appellants to replace the certified exclusive bargaining representative—as they apparently sought to do—the plain terms of the law dictated that they, and not the unions, would be entitled to providers' personal information, completely irrespective of their views. *Id.* at 1111–12.

Section 3556 similarly discriminates based only on the requester's legal status and not on the requesters' message—regardless of whether they are anti-union, pro-union, ambivalent, or apathetic. Like Washington law, California law provides for formal recognition of exclusive bargaining representatives by the state. *See* Cal. Gov't Code § 3520.5. Section 3556 merely provides carveouts for those who must attend the orientation: new public employees; the exclusive bargaining representative, who has a duty to communicate with new public employees regardless of whether they eventually join the union[2]; and vendors contracted to provide services to orientation attendees. A

---

[2] Indeed, a "union's duty extends to all employees in the bargaining unit, regardless of union membership …." *Cnty. of Los Angeles v. Los Angeles Cnty. Emp. Rels. Com.*, 56 Cal. 4th 905, 931 (2013). Therefore, "the union must have the means of communicating with all employees." *Id.*; *see also* Cal. Gov't Code § 3544.9 ("The employee organization recognized or certified as the exclusive

pro-union message is not the common denominator.

Moreover, section 3556 does nothing to prevent the Freedom Foundation from sharing its anti-union message with new public employees. Nevertheless, Freedom Foundation argues that "[w]hile it is true that the Foundation could be present every single day outside possible orientation locations in the off chance that a new employee orientation might be occurring, this would present a constitutionally intolerable burden on the Foundation's speech." (Opp'n at 8). For support, the Foundation cites two Supreme Court cases, *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803 (2000) and *Simon & Schuster, Inc. v. Members of New York State Crime Victims Bd.*, 502 U.S. 105 (1991), for the proposition that "[l]aws banning speech outright and laws burdening speech are 'but a matter of degree' and government's 'content-based burdens must satisfy the same rigorous scrutiny as its content-based bans.'" (Opp'n at 8 (quoting *Playboy*, 529 U.S. at 812)).

Both cases are distinguishable. In *Playboy*, the Supreme Court considered a statute that "require[d] cable operators either to scramble a sexually explicit channel in full or to limit the channel's programming to the hours between 10 p.m. and 6 a.m." 529 U.S. at 808. And in *Simon & Schuster*, the Supreme Court considered New York's "Son of Sam" law, which "require[d] that an accused or convicted criminal's income from works describing his crime be deposited in an escrow account" for the benefit of his victims. 502 U.S. at 108. Both cases considered statutes that placed considerable burdens on specific types of expressive content: sexually explicit programming in *Playboy* and autobiographical accounts of crime in *Simon & Schuster*. On both occasions the Supreme Court found that the statutes, while not amounting to outright bans on the material they were directed at, placed restrictions on the material *because*

---

representative for the purpose of meeting and negotiating shall fairly represent each and every employee in the appropriate unit.").

8

of the content. Therefore, the statutes were subject to higher levels of scrutiny. *See Playboy*, 529 U.S. at 812; *Simon & Schuster*, 502 U.S. at 118.

In contrast, Section 3556 neither bans Freedom Foundation's speech outright nor burdens the Foundation's speech because of its message. The law is not content-based on its face.

2. *Content-Based Purpose*

Because section 3556 does not facially discriminate based on content, the Court moves on to the second question presented in *Reed*: "whether the purpose and justification for the law are content based." *Reed*, 576 U.S. at 156. Here, "[t]he principal inquiry in determining content neutrality … is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). But "[a] regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others … so long as it is '*justified* without reference to the content of the regulated speech.'" *Id.* (emphasis in original) (quoting *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984)).

The legislative history of section 3556 shows that it is "justified without reference" to any content or viewpoint. The confidentiality provision of section 3556 arose out of "incidents of workers being targeted at public gatherings" that caused "privacy and safety concerns" for public employees.[3] (*See* PERB Request for Judicial Notice, Docket No. 53, Ex. A). The purpose of the confidentiality provision is thus content-neutral. That it may have "an incidental effect" on the Freedom Foundation's

---

[3] "'[A] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment,' as long as the facts noticed are not 'subject to reasonable dispute.'" *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)). Legislative history is not subject to reasonable dispute and "is properly a subject of judicial notice." *Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012).

9

wish to speak outside of new employee orientations does not render the law content-based.

The Foundation alleges that section 3556 was motivated by legislators' pro-union bias, (FAC ¶¶ 17–75), and argues that, at this phase, the Court must accept those allegations as true, (Opp'n at 23–25). As discussed above, however, at the motion to dismiss phase, claims must have "facial plausibility"—that is, the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Freedom Foundation's allegations do not allow for such an inference.

As support for its claims that the confidentiality provision was impermissibly motivated by anti-union bias, the Foundation provides three categories of evidence: (1) Democratic lawmakers' statements disapproving of the *Janus* decision, (FAC ¶¶ 17–25; Exs. A–C); (2) evidence of donations from unions to the campaigns of Democratic lawmakers, (*id.* ¶¶ 26–42; Exs. D–F); and (3) statements from unions, agencies, and others—none of whom are legislators—stating that SB 866 would bolster union power, (*id.* ¶¶ 61 –75; Exs. G–M). None of these categories of "evidence" establishes a plausible connection between legislators' perceived pro-union bias and the passage of SB 866. Disapproval of the outcome of *Janus* does not equate to a scheme to discriminate against anti-union advocacy, and "the contention that a statute is 'viewpoint based' simply because its enactment was motivated by the conduct of the partisans on one side of a debate is without support." *Hill v. Colorado*, 530 U.S. 703, 724 (2000).

Moreover, the unions' reasons for supporting SB 866 are not indicative of the legislatures' reasons. Freedom Foundation has drawn no meaningful difference between this case and *Boardman*, in which the appellants likewise "present[ed] *the [u]nions'* motivations in supporting the ballot measure," and the Ninth Circuit "refuse[d] to impute upon Washington voters the allegedly invidious motivations of the

[u]nions." 978 F.3d at 1119 (emphasis in original). It is well-established that a court "will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive." *United States v. O'Brien*, 391 U.S. 367, 383 (1968); *see also Menotti v. City of Seattle*, 409 F.3d 1113, 1129 (9th Cir. 2005) ("In assessing whether a restraint on speech is content neutral, we do not make a searching inquiry of hidden motive …."); *First Resort, Inc. v. Herrera*, 860 F.3d 1263, 1278 (9th Cir. 2017) (on motion for summary judgment, upholding regulation and quoting *Menotti*, 409 F.3d at 1130 n.29, for proposition that "even if [plaintiff] could establish that the City had an illicit motive in adopting [the ordinance], that would not be dispositive because the Supreme Court has held unequivocally that it will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive") (cleaned up); *A.C.L.U. of Nevada v. City of Las Vegas*, 466 F.3d 784, 793–94 (9th Cir. 2006) (on motion for summary judgment, upholding city ordinance aimed at solicitation even though there was a "possibility that solicitation was targeted because … it generally concerns requests for money by the homeless or vagrants and requests for patronage of sex-based businesses" since "the uncontroverted evidence support[ed] that the ordinance was enacted with the purpose of controlling the secondary effects of solicitation, rather than the content of the soliciting requests themselves").

Finally, while the Foundation is correct that *Boardman*—like many of the above cases—was decided at the summary judgment phase, Freedom Foundation must show plausible entitlement to relief to survive *this* phase, which it has not done. (Opp'n at 23). Nor has the Foundation explained what it hopes to find during the discovery process to show that the facially neutral regulation at issue is in fact a content-based regulation motivated by an illicit purpose. Therefore, Counts I and II of the FAC for content- and viewpoint-based discrimination are **DISMISSED**.

### B. Third Cause of Action

Freedom Foundation's third cause of action for unlawful prior restraint is similarly implausible. "In First Amendment law, a prior restraint is an order 'forbidding certain communications when issued in advance of the time that such communications are to occur.'" *Twitter, Inc. v. Garland*, 61 F.4th 686, 702–03 (9th Cir. 2023), *cert. denied sub nom. X Corp. v. Garland*, No. 23-342, 2024 WL 71958 (U.S. Jan. 8, 2024) (quoting *Alexander v. United States*, 509 U.S. 544, 550 (1993)). The confidentiality provision of section 3556 simply does not forbid any communications by the Freedom Foundation. At most, the provision merely impedes the Foundation's ability to efficiently locate and speak to new public employees *en masse* at orientation events. It does not even keep the Foundation from reaching new employees; as the Foundation itself points out, "the names of new employees are available under the California Public Records Act." (Opp'n at 13). Count III for unlawful prior restraint is **DISMISSED**.

### C. Fourth Cause of Action

Finally, the Foundation also fails to state a claim for unlawful denial of access to government-held information. "Although the decision whether to disclose government-controlled information 'at all' is well within the prerogatives of the political branches …, when the government selectively discloses information within its control, a First Amendment claim will lie if the government denies access to information 'based on an illegitimate criterion such as viewpoint.'" *Boardman*, 978 F.3d at 1107 (quoting *Los Angeles Police Dep't v. United Reporting Pub. Corp.*, 528 U.S. 32, 43 (1999) (Ginsburg, J., concurring)). Again, the confidentiality provision of section 3556 denies access to the entire public, with narrow exceptions for those who must be present at the orientation—including the exclusive bargaining representative and vendors contracted to service the orientation. This disclosure, albeit "selective," is not based on illegitimate criterion like viewpoint. Count IV is therefore also **DISMISSED**.

### D. Leave to Amend

As discussed above, "[f]utility of amendment can, by itself, justify the denial of … leave to amend." *Bonin*, 59 F.3d at 845 (9th Cir. 1995). "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988), *overruled on other grounds by Iqbal*, 556 U.S. 662.

Freedom Foundation has not requested leave to amend, and it appears to the Court that there is no set of facts the Foundation could allege in an amended complaint to state a plausible claim under *Twombly* and *Iqbal*. The Court therefore denies leave to amend.

### III. CONCLUSION

The Motions to Dismiss are **GRANTED** without leave to amend for the reasons set forth above.

**IT IS SO ORDERED.**

Dated: January 16, 2024

HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE

13